## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MELISA ESQUIVEL,**

        **Plaintiff,**                **Case No.:**

**v.**

**SARASOTA COUNTY PUBLIC**
**HOSPITAL DISTRICT d/b/a**
**SARASOTA MEMORIAL HOSPITAL,**
**and RAE DaPRATO, individually,**

        **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, MELISA ESQUIVEL, by and through his undersigned counsel and sues the Defendant, SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT d/b/a SARASOTA MEMORIAL HOSPITAL (hereinafter referred to as "SARASOTA MEMORIAL HOSPITAL") and RAE DaPRATO, individually and states as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367 and 1441(b).

2.    Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3.    Plaintiff, MELISA ESQUIVEL, is a resident of Sarasota County, Florida.  At all times material, Plaintiff was an employee of Defendant within the meaning of the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and the Florida Civil Rights Act (FCRA).

4.    Defendant, SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT d/b/a SARASOTA MEMORIAL HOSPITAL, is an independent special district created and chartered by the laws of the State of Florida, authorized and doing business in this Judicial District.   At all times material, SARASOTA MEMORIAL HOSPITAL employed Plaintiff, MELISA ESQUIVEL.  At all times material, SARASOTA MEMORAL HOSPITAL employed the requisite number of employees and, therefore, is an employer as defined by the FMLA, ADA, and FCRA.

5.    Defendant, RAE DaPRATO, is a resident of Manatee County, Florida.

## GENERAL ALLEGATIONS

6.      At all times material, Defendants acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

7.      At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

8.      Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

9.      Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

10.     On October 6, 2020, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

11.     On August 18, 2021, the EEOC issued a Notice of Right to Sue related to Plaintiff's Charge of Discrimination.  This Complaint has been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

12.     Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida*

*Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

13.     On February 8, 2021, pursuant to §768.28, *Florida Statutes*, Plaintiff served her Notice of Claim on the Florida Department of Financial Services, as well as Defendant Sarasota Memorial Hospital related to her negligence claims against Defendant Sarasota Memorial Hospital.

14.     More than six (6) months have passed since Plaintiff served her Notice on Defendant Sarasota Memorial Hospital; therefore, Plaintiff has satisfied all conditions precedent pursuant to §768.28(6)(d), *Florida Statutes.*

## FACTUAL ALLEGATIONS

15.     On or about August 13, 2018, Plaintiff began her employment with Defendant Sarasota Memorial Hospital as a full-time Administrative Assistant in Defendant's Risk Management Department.  Plaintiff was told that the plan in the department was for Plaintiff to replace the full-time Risk Management Legal Data Specialist, Betsy Niemczak, when Niemczak retired.

16.     Plaintiff worked in Defendant's (Sarasota Memorial Hospital) Risk Management department along with seven (7) other employees.

17.     On or about March 31, 2019, Niemczak retired after approximately 26 years of service with Defendant Sarasota Memorial Hospital.  For the

majority of that time, Niemczak was the only Legal Data Specialist in Defendant's Risk Management Department.

18.     Upon Niemczak's retirement, Plaintiff became the new full-time Legal Data Specialist.

19.     In or around July 2019, Niemczak came out of retirement and returned to Defendant's (Sarasota Memorial Hospital) Risk Management department as a part-time Legal Data Specialist.

20.     On October 15, 2019, Plaintiff was assaulted and battered by her supervisor, Defendant Rae DaPrato (Director, Risk Management).   In particular, DaPrato, while attempting to discipline Plaintiff, forcibly grabbed Plaintiff's left hand and wrist, pointed at Plaintiff and yelled: "you listen to me, I am your boss, and you will do what I tell you to do and change it."  Plaintiff's wrist was left discolored and in pain.

21.     This was not Defendant DaPrato's first assault and battery of an employee during her employment with Defendant Sarasota Memorial Hospital.  For example, on one occasion, Defendant DaPrato grabbed an employee by the arm and left bruises.

22.     On October 16, 2019, Plaintiff reported DaPrato's behavior to Susan Curran and Conra Frazier in Defendant's (Sarasota Memorial Hospital) Human Resources department.

23.     When Plaintiff returned to the Risk Management department after making her complaint to Human Resources, DaPrato was waiting and demanded that Plaintiff meet with her behind closed doors.  Plaintiff agreed to meet but requested that the meeting take place in the conference room with the door opened.  At first, DaPrato agreed, but then closed the conference room door when she entered and stated to Plaintiff: "what are you pissed off about?" Plaintiff asked DaPrato to open the door.  DaPrato refused and continued raising her voice at Plaintiff.  At that point, Plaintiff exited the room into the hallway.  DaPrato demanded that Plaintiff return to the conference room and close the door.  Plaintiff refused and sought a manager to be a witness for the meeting.

24.     Following the second incident with DaPrato, Plaintiff again contacted Human Resources and informed them of the situation.

25.     Plaintiff was placed on paid leave by Defendant Sarasota Memorial Hospital pending its investigation into the matter.

26.    While Plaintiff was on leave, Frazier informed Plaintiff that several employees articulated complaints about DaPrato during Frazier's investigation into the matter.

27.    On or about November 1, 2019, Plaintiff filed a complaint with Defendant's (Sarasota Memorial Hospital) Public Safety Department.  Plaintiff requested a copy of the signed complaint but was denied.

28.    Despite DaPrato's history of violent and inappropriate workplace behavior, Defendant Sarasota Memorial Hospital did not terminate her employment.  Nevertheless, Defendant's (Sarasota Memorial Hospital) CEO David Verinder released a statement on Defendant's (Sarasota Memorial Hospital) Facebook page that read in part: "We reject and condemn any form of violence, discrimination, racism, intolerance and inequality. We believe that everyone has a right to feel safe where they live and work."

29.    On February 13, 2020, Plaintiff fell ill while at work for Defendant Sarasota Memorial Hospital.  Plaintiff's co-worker, Joanne Scovil (Registered Nurse), took Plaintiff to Defendant's (Sarasota Memorial Hospital) emergency room in a wheelchair to be assessed due to pain in Plaintiff's head.

30.    Hours later, Plaintiff was diagnosed with a brain aneurysm and severe hypokalemia.  Plaintiff was immediately hospitalized.

31.     On February 14, 2020, Plaintiff was unable to work; therefore, Plaintiff contacted DaPrato and informed DaPrato that she was hospitalized and would follow up as soon as she knew the prognosis.

32.     On February 17, 2020, Plaintiff emailed Loretta Ehlers (LOA – Benefits), informed Ehlers that she was admitted to the hospital on February 13, 2020 for a critical medical condition and requested medical leave forms. Plaintiff also spoke with DaPrato and informed DaPrato that she would need to take FMLA leave and that she was in the process of completing the paperwork with Ehlers.

33.     On February 27, 2020, Plaintiff had her first brain procedure in which Plaintiff's Interventional Neuroradiologist attempted to coil the aneurysm but had to abort the procedure while performing the embolization because the risk of rupture was too high at the time.   The same day, Plaintiff's Interventional Neuroradiologist submitted a Certification of Health Care Provider on behalf of Plaintiff.  In the Certification, Plaintiff's physician noted that Plaintiff would have to miss work in the future due to follow-up procedures at 6 months and 2 years.

34.     Plaintiff's FMLA leave was approved beginning February 13, 2020 and was later extended until April 1, 2020.

35.     While Plaintiff was on FMLA leave, Niemczak and Allison Bailey (Administrative Assistant) covered Plaintiff's job duties and responsibilities.

36.     On March 5, 2020, Plaintiff had her second brain procedure and was admitted to Defendant's (Sarasota Memorial Hospital) ICU following the procedure.

37.     On or about March 9, 2020, Cheryl Roberts became the new Director of Risk Management at Defendant Sarasota Memorial Hospital.

38.     On or about March 31, 2020, Defendant DaPrato retired from her employment with Defendant Sarasota Memorial Hospital.  However, DaPrato continued to work for Defendant Sarasota Memorial Hospital and was compensated by Defendant Sarasota Memorial Hospital into May 2020, if not longer.

39.     On April 1, 2020, Plaintiff reported to work, but was unable to complete the workday due to her serious health condition.  Roberts instructed Plaintiff to go to the emergency room since Plaintiff did not look well.  Plaintiff declined due to the threat of COVID-19.   Instead, Plaintiff treated with paramedics at her home and then with her doctor, who ordered further testing.

40.    On April 3, 2020, Plaintiff's physician provided Defendant Sarasota Memorial Hospital a note stating that Plaintiff should be excused from work until April 14, 2020.

41.    On April 8, 2020, Plaintiff emailed Ehlers and asked if Ehlers received Plaintiff's doctor's note related to her medical leave and asked if they could discuss Plaintiff's Short Term Disability paperwork.  Ehlers did not respond.

42.    On April 10, 2020, Plaintiff sent Ehlers a follow-up email and noted that she also needed to speak with Ehlers regarding continuation of Plaintiff's health insurance.  Ehlers did not respond.

43.    On April 13, 2020, Plaintiff followed up with Ehlers again.  In her email, Plaintiff noted that she spoke with Cheryl Roberts the week prior and explained to Roberts that she was not cleared to return to work and had her leave extended due to her health condition and the need for further testing. Plaintiff again requested information regarding her health insurance and noted her concern that it would lapse.

44.    On April 14, 2020, Ehlers finally responded and confirmed Plaintiff's FMLA leave was extended through April 28, 2020.

45.     On April 28, 2020, Plaintiff contacted Roberts, but Roberts was not available.

46.     On April 29, 2020, Plaintiff again contacted Roberts, but she was unavailable.   Plaintiff spoke with her co-worker, Allison Bailey who told Plaintiff that she would send Roberts a text message reminder to contact Plaintiff.  Plaintiff told Bailey that the purpose of her calls was to inform Roberts that she was cleared to return to work.

47.     On April 29, 2020, Plaintiff's doctor provided Defendant a return-to-work letter indicating that Plaintiff could return to work for Defendant Sarasota Memorial Hospital on May 4, 2020.

48.     On April 29, 2020, Lupe (Maria) Manzo (Employee Health Services) emailed Plaintiff and requested that Plaintiff complete Defendant's (Sarasota Memorial Hospital) Return to Work document that included a requirement that Plaintiff provide Defendant Sarasota Memorial Hospital with a list of medications Plaintiff was taking.  Manzo told Plaintiff that it was required for all employees returning to work who missed 40 hours or more.

49.     On April 30, 2020, Manzo emailed Plaintiff and stated: "I spoke with John Shirk in HR, he needs me to clear you, to be able to do what he's working on."

50.   Plaintiff did not receive a return call from Roberts until April 30, 2020.

51.   During the April 30, 2020 call, Roberts told Plaintiff that she could not return to work because she was placed on furlough by Defendant Sarasota Memorial Hospital.  Plaintiff asked when she was placed on furlough and Roberts told Plaintiff that she made the decision early in the month of April and had a letter but did not inform Plaintiff because she did not know the status of Plaintiff's health and was not sure when Plaintiff was returning.   Roberts further stated that she would send Plaintiff an email with the furlough information.

52.    During the phone call with Roberts, Plaintiff asked if she was the only employee chosen for furlough in the department and Roberts confirmed that she was.   Roberts further told Plaintiff that the furlough should only last until the end of May 2020 and Plaintiff could hopefully return to work on June 1, 2020.

53.   On April 30, 2020, Roberts emailed Plaintiff, stating: "The pandemic has had a devastating financial impact on the organization and patient volumes.  Our department along with every other department has had to reduce hours to meet the decrease in patient volumes and reduce cost."

Attached to Roberts' email was a furlough letter dated April 13, 2020, stating that Plaintiff's position was being furloughed beginning May 1, 2020.

54.    Confused, Plaintiff emailed Roberts asking if she could have a furlough notice dated April 30, 2020 since this was the first date in which Plaintiff was notified of the furlough.

55.    Plaintiff was then provided a Notice of Furlough dated April 30, 2020 stating that Plaintiff's furlough began May 4, 2020.

56.    On May 18, 2020, Roberts and Conra Frazier (Senior Employee Relations Consultant, Human Resources) called Plaintiff notified Plaintiff that she was terminated from her employment Defendant Sarasota Memorial Hospital.  Frazier stated that it was due to budget cuts in the department; yet Frazier noted that the Risk Management department was planning to hire a new employee.  Frazier further told Plaintiff that her benefits would end on May 31, 2020 and an email would follow after the call, which would include a severance offer.

57.    Plaintiff was never offered the option of remaining on furlough, accepting a temporary reduction in pay, or transitioning her position to part-time.

58.     At the time of Plaintiff's termination, Human Resources and Plaintiff's supervisors were aware that Plaintiff would require future FMLA and/or medical leaves for her serious health condition, including brain procedures every other year for the rest of Plaintiff's life.

59.     On May 19, 2020, Plaintiff applied for an Administrative Assistant position at SMH Bayside behavioral unit.  Despite being qualified for the position, Plaintiff was not granted an interview.

60.     On June 9, 2020, Frazier finally emailed Plaintiff the proposed Severance and General Release, which was dated May 18, 2020.

61.     The Severance Letter stated that Plaintiff was terminated because "the restructuring of your department has resulted in the elimination of your position . . ." and "SMHCS has determined that it will not be necessary for you to continue your current role as Risk Management Legal Data Specialist in the System's Risk Management department."   The letter further stated that Plaintiff's separation date was May 29, 2020 and that Plaintiff would remain on furlough until then.

62.     Moreover, the Severance Letter encouraged Plaintiff to meet with Defendant's (Sarasota Memorial Hospital) Benefits department to review

which benefit plans could be continued through the Consolidated Omnibus Budget Reconciliation Act (COBRA).

63.     On June 9, 2020, Plaintiff emailed Frazier and informed her that she picked up her personal belongings and items were missing, including an expensive pair of Apple AirPods.

64.     Defendant Sarasota Memorial Hospital failed to timely provide Plaintiff with COBRA paperwork and, since Plaintiff's health insurance expired, Plaintiff has had to stop important medical care that she needs.

65.     On June 23, 2020, Roberts emailed Plaintiff and stated that Defendant Sarasota Memorial Hospital would replace the Apple AirPods, but Plaintiff would have to purchase them and submit the receipt to Defendant for reimbursement.   On June 29, 2020, Plaintiff emailed Roberts the receipts of purchase for the missing AirPods and for Plaintiff's missing personal calendar. On July 7, 2020, Defendant Sarasota Memorial Hospital returned Plaintiff's AirPods and sent Plaintiff a reimbursement check for the personal agenda.

66.     On June 24, 2020, Plaintiff emailed her resume to the medical staff department manager for consideration of the open Credentialing Analyst position.  Despite Plaintiff being qualified for the position, she was not granted an interview.

**COUNT I**
**FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE**
*(As to Defendant Sarasota Memorial Hospital)*

67.    Plaintiff, MELISA ESQUIVEL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-six (66).

68.    Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq*.

69.    Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant Sarasota Memorial Hospital for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding her FMLA leave qualification, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

70.    Defendant Sarasota Memorial Hospital is a covered employer under the FMLA in that it had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

71.    Plaintiff suffered from a serious health condition within the meaning of the FMLA.

72.    Defendant's (Sarasota Memorial Hospital) actions interfered with Plaintiff's lawful exercise of her FMLA rights.  Specifically, Defendant failed to

restore Plaintiff to her position with Defendant or a substantially equivalent position.

73.     Defendant's actions constitute a violation of the FMLA.

74.     As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant Sarasota Memorial Hospital:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Liquidated damages;

e.     Attorneys' fees and costs;

f.     Injunctive relief; and

g.     For any other relief this Court deems just and equitable.

**COUNT II**
**FAMILY AND MEDICAL LEAVE ACT -- RETALIATION**
*(As to Defendant Sarasota Memorial Hospital)*

75.     Plaintiff, MELISA ESQUIVEL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-six (66).

76.     Defendant Sarasota Memorial Hospital retaliated against Plaintiff in violation of the FMLA in that Plaintiff's utilization of FMLA leave was a substantial or motivating factor that prompted Defendant to:

      a.     furlough Plaintiff;

      b.     terminate Plaintiff's employment;

      c.     deny Plaintiff notice under COBRA; and

      d.     fail to hire Plaintiff;

77.     Defendant's actions constitute violations of the FMLA.

78.     As a result of Defendant's (Sarasota Memorial Hospital) actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant Sarasota Memorial Hospital:

      a.     Back pay and benefits;

      b.     Prejudgment interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Liquidated damages;

      e.     Attorneys' fees and costs;

      f.     Injunctive relief; and

      g.     For any other relief this Court deems just and equitable.

## COUNT III
## <u>AMERICANS WITH DISABILITIES ACT – DISCRIMINATION</u>
*(As to Defendant Sarasota Memorial Hospital)*

79.     Plaintiff, MELISA ESQUIVEL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-six (66).

80.     Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq.*

81.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

82.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.  Specifically, Plaintiff's brain aneurysm and severe hypokalemia substantially limited one or more major life activities (e.g., working, concentrating, thinking, communicating) and major bodily functions (e.g., neurological, muscular, cellular, and vascular).

83.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

84.     By the conduct described above, Defendant Sarasota Memorial Hospital engaged in unlawful employment practices and discriminated against

Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant:

      (a)    furloughed Plaintiff;

      (b)    terminated Plaintiff's employment;

      (c)    deny Plaintiff notice under COBRA; and

      (d)    failed to hire Plaintiff.

85.    The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant Sarasota Memorial Hospital is liable.

86.    Defendant's (Sarasota Memorial Hospital) unlawful and discriminatory employment practices toward Plaintiff were intentional.

87.    Defendant's (Sarasota Memorial Hospital) unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

88.    As a result of Defendant's (Sarasota Memorial Hospital) unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant Sarasota Memorial Hospital:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Punitive damages;

    f.    Attorneys' fees and costs;

    g.    Injunctive relief; and

    h.    For any other relief this Court deems just and equitable.

### COUNT IV
### FLORIDA CIVIL RIGHTS ACT – DISABILITY/HANDICAP DISCRIMINATION
*(As to Defendant Sarasota Memorial Hospital)*

89.    Plaintiff, MELISA ESQUIVEL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-six (66).

90.    Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, Chapter 760, *Florida Statutes*.

91.    Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

92.     Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's brain aneurysm and severe hypokalemia substantially limited one or more major life activities (e.g., working, concentrating, thinking, communicating) and major bodily functions (e.g., neurological, muscular, cellular, and vascular).

93.     Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

94.     By the conduct described above, Defendant Sarasota Memorial Hospital has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act.  Specifically, Defendant:

(a)     furloughed Plaintiff;

(b)     terminated Plaintiff's employment;

(c)     deny Plaintiff notice under COBRA; and

(d)     failed to hire Plaintiff.

95.     The above-described acts of disability discrimination constitute a violation of the Florida Civil Rights Act, for which Defendant Sarasota Memorial Hospital is liable.

96.     Defendant's (Sarasota Memorial Hospital) unlawful and discriminatory employment practices toward Plaintiff were intentional.

97.     Defendant's (Sarasota Memorial Hospital) unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

98.     As a result of Defendant's (Sarasota Memorial Hospital) unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant Sarasota Memorial Hospital:

   a.     Back pay and benefits;

   b.     Prejudgment interest on back pay and benefits;

   c.     Front pay and benefits;

   d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

   e.     Punitive damages;

   f.     Attorneys' fees and costs;

g.     Injunctive relief; and

h.     For any other relief this Court deems just and equitable.

**COUNT V**
**NEGLIGENT SUPERVISION/NEGLIGENT RETENTION**
*(As to Defendant Sarasota Memorial Hospital)*

99.    Plaintiff, MELISA ESQUIVEL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-six (66).

100.   Defendant Sarasota Memorial Hospital knew, or in the exercise of reasonable care, should have known during Defendant Rae DaPrato's course of employment with Defendant Sarasota Memorial Hospital of problems with DaPrato that indicated her unfitness and/or unsuitability as an employee, agent and/or servant of Defendant Sarasota Memorial Hospital.

101.   Such problems included but are not limited to prior employee complaints about DaPrato for inappropriate physical behavior.

102.   Defendant Sarasota Memorial Hospital negligently failed to take further action such as investigating, discharging, or reassigning DaPrato during the course of her employment, agency and/or service with Defendant Sarasota Memorial Hospital.

103.   Defendant Sarasota Memorial Hospital owed a duty to Plaintiff to exercise reasonable care in retaining competent, reliable and safe employees

who Defendant Sarasota Memorial Hospital knew or should have known would be suitable to supervise, associate with and work alongside its employees.

104.   Defendant Sarasota Memorial Hospital breached its duty to Plaintiff and others similarly situated to exercise reasonable care in retaining competent, reliable and safe persons by failing to exercise reasonable care in retaining Rae DaPrato, by failing to institute and/or enforce policies and/or procedures to properly investigate her background when it knew, or in the exercise of reasonable care, should have known, she would be unsuitable to supervise, associate with and work alongside its employees.

105.   It was reasonably foreseeable to Defendant Sarasota Memorial Hospital that its negligence in retaining Rae DaPrato would pose a danger to persons such as Plaintiff and others similarly situated.

106.   As a direct and proximate result of the negligence of Defendant Sarasota Memorial Hospital, Plaintiff has suffered damages, including, but not limited to:

> a.   Pain, suffering, anguish, and severe emotional distress;
>
> b.   Embarrassment;
>
> c.   Humiliation;

d.   Loss of capacity for the enjoyment of life;

e.   Inconvenience;

f.   Loss of employment opportunities;

g.   Loss or diminution of income and employment benefits;

h.   Loss of dignity;

i.   Damage to reputation; and

j.   other non-pecuniary losses for which compensatory damages should be awarded.

WHEREFORE, Plaintiff demands entry of judgment against Defendant Sarasota Memorial Hospital for compensatory damages, costs, and any other and further relief that this Court deems just and proper.

## COUNT VI
## ASSAULT AND BATTERY
*(As to Defendant Rae DaPrato)*

107.   Plaintiff, MELISA ESQUIVEL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-six (66).

108.   By the conduct described above, Defendant Rae DaPrato intentionally and unlawfully directed offensive physical touching toward Plaintiff and created a fear in Plaintiff of imminent peril.   Said conduct was coupled with the apparent present ability to effectuate the threat.

109.   The batteries were unwanted by Plaintiff and she did not consent to Defendant DaPrato's actions.

110.   As a direct result of the assaults and batteries perpetrated on Plaintiff, she suffered damages.

WHEREFORE, Plaintiff prays for judgment against Defendant, RAE DaPRATO, for the following damages:

a.   Mental pain;

b.   Severe emotional distress;

c.   Embarrassment;

d.   Humiliation;

e.   Mental anguish;

f.   Loss of the capacity for the enjoyment of life;

g.   Impairment of working ability;

h.   Loss of dignity;

i.   Loss of or diminution of earning or earning capacity.

## **DEMAND FOR JURY TRIAL**

111.   Plaintiff, MELISA ESQUIVEL, demands a trial by jury on all issues so triable.

**DATED** this 15th day of November 2021.

**FLORIN GRAY BOUZAS OWENS, LLC**

*/s/ Gregory Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**MIGUEL BOUZAS, ESQUIRE**
Florida Bar No.: 48943
miguel@fgbolaw.com
16524 Pointe Village Dr.
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*